1

2

*FOR PUBLICATION*

3

4

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

5

6

7

8

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| In re | ) Case No. 14-24616-E-13 |
| | ) |
| NICOLE GOLDEN and | ) |
| STEPHEN M. ALTER, | ) |
| | ) Adv. Proc. No. 21-2012 |
| Debtors. | ) |
| ———————————— | ) **Joint Memorandum Opinion** |
| | ) **and Decision For:** |
| NICOLE GOLDEN and | ) |
| STEPHEN ALTER, | ) Defendant-IRS Motion for Summary Judgment |
| | ) DCN: none given; Docket Entry No. 17 |
| Plaintiffs, | ) |
| | ) and |
| v. | ) |
| | ) Plaintiff-Debtor Countermotion for Summary |
| UNITED STATES OF AMERICA | ) Judgment |
| (INTERNAL REVENUE SERVICE), | ) DCN: JGD-10; Docket Entry No. 28 |
| | ) |
| Defendant. | ) |
| ———————————— | ) |

18

19

20

**JOINT MEMORANDUM OPINION AND DECISION**
**GRANTING PLAINTIFF-DEBTOR'S COUNTERMOTION FOR**
**SUMMARY JUDGMENT**
**AND**
**DENYING DEFENDANT-IRS' MOTION FOR SUMMARY JUDGMENT**

21

Nicole Golden and Stephen Alter (collectively the "Plaintiff-Debtor") filed the instant

22

adversary proceeding on February 8, 2021, against the United States of America (Internal Revenue

23

Service) "Defendant-IRS."[1]  The Complaint, Dckt. 1, begins with a statement that the Adversary

24

Proceeding is brought as provided in Federal Rule of Bankruptcy Procedure 7001(2), requiring an

25

adversary proceeding to determine the extent, validity, and priority of a lien or interest in property

26

(with stated exceptions not applicable here), and 7001(6), requiring an adversary proceeding to

27

28

---

[1]  In this Decision, the court referenced the United States of America (Internal Revenue Service), the Defendant, as "Defendant-IRS."  When referring to it in connection with ruling in other cases, the court identifies it as the "Internal Revenue Service" or "IRS."

1    determine the dischargeability of the 2008 tax year federal tax debt.  Complaint, ¶ 1; Dckt. 1.

2          The Complaint then lays out in a short and plain statement (*Ashcroft v. Iqbal*, 556 U.S. 662

3    (2009);  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) the factual and legal bases upon

4    which Plaintiff-Debtor asserts the right to a determination that the 2008 federal tax obligation was

5    discharged in Debtor's Chapter 13 case.

6          In response, Defendant-IRS filed its answer (Dckt. 7) on March 15, 2021, admitting and

7    denying specific allegations in the Complaint.  Defendant-IRS admits the allegations that this is a

8    core matter proceeding as provided in 28 U.S.C. § 157(b)(I) and that federal court jurisdiction arises

9    under 28 U.S.C. § 1334.

10         The Parties also affirmatively stated on the record that they each consent to the bankruptcy

11   judge entering all final orders and judgment in this Adversary Proceeding for all claims in the

12   Complaint as filed (Dckt. 1) to the extent that any matters therein would be non-core matters.  Civil

13   Minutes and Order; Dckts. 11, 12.

14   **Filing of Motion and Countermotion for Summary Judgment**

15         On December 3, 2021, Defendant-IRS filed a Motion for Summary Judgment requesting a

16   determination that Plaintiff-Debtor's obligations for the 2008 tax year claim are nondischargeable

17   as provided in 11 U.S.C. §523(a)(1)(B).  Dckt. 17.

18         On  December  3,  2021,  Plaintiff-Debtor  filed  a  Motion  for  Summary  Judgment

19   ("Countermotion for Summary Judgment") requesting a determination that the tax obligations for

20   the 2008 tax year were discharged in Plaintiff-Debtor's Chapter 13 case.  Dckt. 28.

21         As addressed below, the Parties have effectively and efficiently availed themselves of the

22   tools available in federal litigation, determined that there are no material facts in dispute, and have

23   presented the court with these two motions for summary judgment on non-disputed facts for which

24   complete relief can be granted for one party against the other in this Adversary Proceeding.

25   **Issuance of a Joint**
26   **Memorandum Opinion and Decision**

27         In light of the Motion for Summary Judgment and the Countermotion for Summary Judgment

28   being based on the same facts not in dispute and the same legal bases, the court issues one Joint

Memorandum Opinion and Decision, which will be separately filed for each summary judgment motion and a separate order thereon.

**REVIEW OF THE DEFENDANT-IRS**
**MOTION FOR SUMMARY JUDGMENT**

For Defendant-IRS' Motion for Summary Judgment, the grounds stated with particularity, as required by Federal Rule of Civil Procedure 7(b), which is incorporated into Federal Rule of Bankruptcy Procedure 7007, upon which Defendant-IRS asserts that judgment determining that the 2008 tax debt is nondischargeable are:

A.   Defendant-IRS moves for summary judgment. Motion for Summary Judgment, p. 1:23-25; Dckt. 17.

B.   Defendant-IRS states the legal conclusion that it is entitled to a judgment as a matter of law because the 2008 income tax assessment is "exempt" from discharge under 11 U.S.C. § 523(a)(1)(B)(i). *Id.*, p. 1:26-27, 2:1.

Congress provides in 11 U.S.C. § 523(a)(1)(B)(i) the grounds for when a tax obligation is nondischargeable for which a return, or equivalent report or notice, if required, was not filed or given.

C.   Defendant-IRS asserts that since the 2008 taxes were assessed prior to a return being filed, its claim for 2008 taxes is exempt from discharge because it is not a debt relating to a return filed, but an assessed tax obligation. *Id.*, p. 2:1-3.

**Response of Plaintiff-Debtor**

No opposition to Defendant-IRS' Motion for Summary Judgment has been filed by Plaintiff-Debtor. *See* L.B.R. 7056-1(b). However, Plaintiff-Debtor filed the Countermotion for Summary Judgment, using a separate docket control number (DCN: JGD-10) as required by Local Bankruptcy Rule 9014-1(c)(4). As provided in Local Bankruptcy Rule 01-4-1(i), if a countermotion is filed, it is to be set for hearing at the same time at the original motion so that the parties and court can address them in tandem.

For the Motion for Summary Judgment and the Countermotion for Summary Judgment, the Parties are arguing different sides of the same coin, each motion effectively serving as an opposition to the other.

/ / /

**Review of Plaintiff-Debtor's**
**Countermotion for Summary Judgment**

In the Countermotion for Summary Judgment filed by Plaintiff-Debtor, the grounds stated with particularity, as required by Federal Rule of Civil Procedure 7(b) and Federal Rule of Bankruptcy Procedure 7007, are:

> A.      Plaintiff-Debtor contends that the amounts alleged to be owed for 2008, which was listed by the IRS as a general unsecured claim, were discharged as a result of their completion of their Chapter 13 Plan. Plaintiff-Debtor Motion, p. 1:24-26; Dckt. 28.
>
> B.      The Motion is and shall be based on this Motion, and the Notice of Motion, Memorandum of Points & Authorities, Separate Statement of Undisputed, Declaration of Stephen Michael Alter, each concurrently filed in support of this Motion, and such other matters as may be presented at or before the hearing of this matter. *Id.*, p. 2:3-6.

Thus, in substance, there are no grounds stated in the Countermotion for Summary Judgment. Rather, the court is instructed to read the Motion, read the Notice of Motion, read the Memorandum of Points and Authorities, read the Separate Statement of Undisputed Facts, read the Declaration of Stephen Alter, and read whatever else Plaintiff-Debtor chooses to file up to the date of the hearing (though such is not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules), and then assemble whatever grounds the court thinks that are best for Plaintiff-Debtor.

Though the court generally does not so do, in light of the Parties having reached an agreed statement of undisputed facts and their efforts to effectively prosecute this litigation, there appearing only the determination of legal issues to rule on the Motion and Countermotion, and the Points and Authorities for the Countermotion for Summary Judgment containing a separate statement of the grounds, the court will "assemble" and state the grounds for the Countermotion for Summary Judgment.

**Grounds From the Memorandum of Points and Authorities**

In the Points and Authorities filed by Plaintiff-Debtor, there is a section titled "Relevant Facts" which appears to state the factual grounds (not legal authorities and points/arguments) that are to be stated with particularity in the Motion. Using that portion of the Points and Authorities, the grounds stated by Plaintiff-Debtor are:

1. In 2008, Plaintiff-Debtor began experiencing financial difficulties. A rental property they owned was foreclosed on. The financial difficulties adversely affected their jointly owned and operated business, All Seasons Concierge. The financial difficulties adversely affected their marriage.

2. On April 15, 2009, Plaintiff-Debtor filed a Request for Extension of Time, extending the date for filing the 2008 Tax Return to October 15, 2009.

3. In February 2010, Plaintiff-Debtor, whose daughters at the time were 4 and 6, permanently separated. Nicole Golden alone began operating the Business as a sole proprietorship. It took time for Ms. Golden to take over the tax responsibilities, which had previously been Stephen Alter's responsibility. This was another extremely difficult year for Plaintiff-Debtor, personally and financially.

4. On March 8, 2011, Plaintiff-Debtor filed their 2009 Tax Return.

5. On March 10, 2011, Plaintiff-Debtor's tax preparer Jean Barnett completed Plaintiff-Debtor's 2008 Individual Income Tax Return (the "2008 Late Return"),[2] showing a total tax of $23,377 and a Balance Due of $23,040. Barnett and Plaintiff-Debtor signed the Return on March 10, 2011.

6. On March 14, 2011, Defendant-IRS sent a letter to Plaintiff-Debtor asserting that there was a tax deficiency of $276,506, which was based primarily on Self-Employment Income of $760,199.00.

7. Although the 2008 Return had been completed prior to receiving the March 14, 2011 Letter from Defendant-IRS, Plaintiff-Debtor held off on filing the return in an effort to put together the money to pay off the taxes and to understand the basis for Defendant-IRS position.

8. On August 10, 2011, Defendant-IRS received the 2008 Return. This return showed Gross Income of $760,200 for Plaintiff-Debtor's vacation rental business, but a Net Profit of $132,123 after accounting for expenses, including $460,426 to housekeeping contractors.

9. The 2008 return: (1) was a return; (2) was executed under penalty of perjury; (3) contained sufficient data to allow calculation of tax; and (4) represents an honest and reasonable attempt to satisfy the requirements of the tax law.

10. For nineteen (19) months, Plaintiff-Debtor attempted to get Defendant-IRS to correct the balance owed on 2008.

11. On February 11, 2013, Defendant-IRS confirmed that Defendant-IRS has made mistakes on the 2008 Return and reduced the balance from $417,000 to $23,040.

---

[2]  The court uses the term "2008 Late Return" to identify the 2008 Tax Return filed by Plaintiff-Debtor, which was received by Defendant-IRS after the substitute return had been filed by Defendant-IRS and a tax obligation for 2008 assessed.  Reference has been made in the pleadings that the court might conclude that the 2008 Late Return as an "amended return."  Such a conclusion is not determinative of the issues in ruling on the motions for summary judgment, which is whether the 2008 Late Return is a "return" as provided in 11 U.S.C. § 523(a)(1)(A)(i) and the definition hanging paragraph found after 11 U.S.C. § 523(a)(19)(B) [discussed *infra*].

12. Plaintiff-Debtor attempted to work with Defendant-IRS on the back taxes that remained owed.

13. On or about April 30, 2014, Plaintiff-Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of California and were assigned Case Number 14-24616.

14. On or about June 11, 2014, the Internal Revenue Service filed Claim 2-1 (the "IRS Claim") for a total of $88,515.94, of which $7,979.51 was identified as secured and $49,871.18 was listed as priority and the balance of $30,665.25 was listed as a general unsecured claim.

15. Defendant-IRS' Claim listed the 2008 taxes as a general unsecured claim, showing an assessment date of July 28, 2011.

16. On July 18, 2014, Plaintiff-Debtor filed a First Amended Chapter 13 Plan (the "Plan"), which was confirmed on December 29, 2014.

17. Defendant-IRS did not object to the Plan, nor did Defendant-IRS file an objection to discharge before the deadline of August 11, 2014.

18. Plaintiff-Debtor completed their plan, paying a total of $51,093.03 to Defendant-IRS.

19. On February 18, 2020, Plaintiff-Debtor obtained their discharge.

20. On June 29, 2020, Plaintiff-Debtor received notice that Defendant-IRS had a lien based on taxes claimed to be owed for 2008.

21. Defendant-IRS did not object to the 1st Amended Plan or file an objection to the discharge.

Plaintiff-Debtor Points and Authorities, pp. 2-4; Dckt. 33.

Plaintiff-Debtor has pressed the point that Bankruptcy Law favors honest but unfortunate debtors. Counsel for Plaintiff-Debtor recounted at the hearing the events occurring in 2008 which impacted Plaintiff-Debtor, which included: (1) rental property foreclosure, (2) business difficulties, and (3) marital difficulties. These led to the two persons who are the Plaintiff-Debtor permanently separating in 2010 and having to address custody and support issues for their two children. This led to Nicole Golden, one of the two persons comprising the Plaintiff-Debtor, separately taking over the "family business," and Steve Alter, the other person comprising the Plaintiff-Debtor, then stopping doing any work on the "family business."

With respect to the tax returns, in late 2010 Plaintiff-Debtor contacted with a tax preparer to assist in preparing the 2008 and 2009 returns. The 2009 return was filed, but the 2008 return was given to the Plaintiff-Debtor to file in light of the computed tax liability which would need to be

6

paid. Plaintiff-Debtor held the 2008 tax return, not filing it, stating that they did so while they attempted to find money to pay the tax obligation.

Plaintiff-Debtor points to there being no ongoing tax collection efforts by the Defendant-IRS and that Plaintiff-Debtor communicated (though belatedly) with Defendant-IRS. Plaintiff-Debtor points to their 2008 Late Return that was filed, the prior assessment by Defendant-IRS being reduced to an amount consistent with Plaintiff-Debtor's 2008 Late Return, and several years passing during which Defendant-IRS could work to collect the corrected amount consistent with the 2008 Late Return filed or given to Defendant-IRS.

**Supplemental Pleadings**

At the February 10, 2022 hearing, the court requested the parties provide supplemental briefing on the issues of what the federal tax law provides with respect to filing of returns by a tax payer after the filing of a substitute return.

On February 25, 2022, Defendant-IRS filed a Supplemental Brief addressing specific tax law issues as requested by the court. Dckt. 54. In the following excerpt from Supplemental Brief, Defendant-IRS states (emphasis added):

Procedural Effect of a Substitute Return

The substitute for return "shall be *prima facie* good and sufficient for all legal purposes," 26 U.S.C. § 6020(b)(2), but it does not qualify as a return within the meaning of 11 U.S.C.§ 523(a)(1)(B)(I) because it is not signed by the taxpayer, *Wetzel v. United States*, No. CC-96-1811, 1997 WL 834810 at *5 (B.A.P. 9th Cir. July 15, 1997). Dckt. 54 at 2:20-24. Once the substitute is completed, if there is a deficiency, IRS mails a "Notice of Deficiency." 26 U.S.C. § 6212(a). The taxpayer then has two options:

1.      The taxpayer can then file a petition within 90 days if they contest the amount in the deficiency. 26 U.S.C. § 6213(a).

2.      The taxpayer can file their return as if the substitute were not already filed because the substitute does not take effect until the deficiency procedures are first completed. *Millsap v. Comm'r*, 91 T.C. 926, 932, 937–38 (1988).

If the taxpayer fails to do either of the above, the deficiency shall be assessed (assessment) and paid upon notice and demand. 26 U.S.C. § 6213(c); see 26 U.S.C. § 6303(a). The IRS can determine a further deficiency and notify the taxpayer.26 C.F.R. § 301.6213-1(c).

///

///

7

Consequences of an Assessment

**An assessment shifts the burden to the taxpayer to show they do not owe the amount of tax the IRS has assessed**. *Fior D'Italia Inc. v. United States*, 242 F.3d 844, 847 (9th Cir. 2001), reversed on other grounds by 536 U.S. 238 (2002). The IRS only needs to show minimal facts to support the assessment. *Id*. (quoting *Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997)). Once the assessment is made, it becomes collectible. *Romano-Murphy v. Comm'r*, 152 T.C. 278, 309 (2019).

Post-Substitute Return

If a taxpayer files a return before the deficiency progresses into an assessment, it is a challenge to the deficiency. See *Millsap*, 91 T.C. at 938. If a taxpayer files a return after an assessment, there are two possibilities if taxpayer disagrees:

1.  Overpayment - CLAIM FOR REFUND assuming it is timely. 26 U.S.C. § 6401. Either:

    a.  IRS renders a decision on the merits; or

    b.  Taxpayer can bring suit under 26 U.S.C. § 7422 and court will decide on the merits

2.  No Overpayment - AMENDED RETURN. 26 C.F.R. § 301.6402-3.

    a.  The Code does not provide for the taxpayer's filing or IRS's acceptance of an amended return. *Badaracco v. Comm'r*, 464 U.S. 386, 393 (1984).

    b.  IRS is not required to accept it or treat as superseding the original. *Fayeghi v. Comm'r*, 211 F.3d 504, 507 (9th Cir. 2000).

    c.  The only way to force the IRS to decide on an amended return is to pay the full amount of outstanding liability so the amended return constitutes a claim for refund.

Effect of Debtor's "Return" filed in August 2011

Defendant-IRS states prior to filing their 2008 Tax Returns in August 2011, at no point did Plaintiff pay toward their 2008 account. Therefore, the return did not constitute a claim for refund and **the IRS considered the August 2011 return to be an amended return.** As an amended return, it had no effect on the assessment from the substitute return.

**Defendant-IRS further states "it does not really make a difference whether the Court construes the taxpayers' return filed in August 2011 as an amended return . . . or . . . an original return. . . ."** Supplemental Brief, Dckt. 54 at 5:20-22. **Defendant-IRS argues the *Beard* test controls**, and the taxpayers did not make an honest and reasonable attempt to comply.

///

**APPLICABLE LAW**

**Motion for Summary Judgment**

In an adversary proceeding, summary judgment is proper when "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); 11 Moore's Federal Practice, Civil § 56.20 (Matthew Bender 3d Ed.). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 (1986).

Here, the Parties efficiently and effectively utilizing their respective resources, as well as the court's judicial resources, have provided the court with agreed undisputed facts upon which all issues in this Adversary Proceeding can be fully adjudicated.

**Nondischargeable Tax Debt**

For the Motion and the Countermotion for Summary Judgment, the Parties cite to two subparagraphs of 11 U.S.C. § 523(a)(1)(B), which provide (emphasis added):

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
> . . .
>
> (B) with respect to which a **return**, or equivalent report or notice, if required —
>
>    (i) **was not filed or given**; or
>
>    (ii) was **filed** [August 10, 2011, postmarked August 8, 2011] **or given after the date** on which such return, report, or notice **was last due, under applicable law or under any extension** [October 15, 2009], and **after two years before the date of the filing of the petition** [April 30, 2014]; or . . .

Prior to 2005, Congress did not provide a statutory definition of "return," so "the Tax Court developed a widely-accepted interpretation of that term" commonly known as the *Beard* test. *United States v. Hatton (In re Hatton II* ), 220 F.3d 1057, 1070 (9th Cir. 2000) (citing *Beard v. Comm'r*,

82 T.C. 766, 767 (1984)). [3]  In order for a document to qualify as a return under this interpretation, the document must:

> (1) purport to be a return;
>
> (2) be executed under penalty of perjury;
>
> (3) contain sufficient data to allow calculation of tax; and
>
> (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law.

(*Id.* at 1060-61.)

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the following "hanging paragraph" as § 523(a)(19) which further defines the term "return" in 11 U.S.C. § 523(a), stating:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

Section 6020 of the Internal Revenue Code, 26 U.S.C. § 6020, provides under § 6020(a) a person who fails to make a return, but assists the Internal Revenue Service in preparing a § 6020 return, may constitute a return by the tax payer.  However, § 6020(b) refers to a return made by the Internal Revenue Service without the assistance of the taxpayer.

Though Congress amended § 523 to include a definition of "return," the Ninth Circuit has determined that the four-factor test stated in *Beard* and adopted by the Ninth Circuit in *Hatton II* continues to apply with the new definition to determine what constitutes a tax return. *Smith v. United States IRS* (*In re Smith*), 828 F.3d 1094, 1096 (9th Cir. 2016).

/ / /

/ / /

---

[3]  There being two *In re Hatton* decisions made by the Ninth Circuit Court of Appeal, the court adopts the Bankruptcy Appellate Panel's designation of "*Hatton II*" in referencing the later *Hatton* decision relating to the application of Beard test in connection with 11 U.S.C. § 523(a)(1)(B).

**DISCUSSION**

In the present case, there are no issues of material facts in dispute.  Plaintiff-Debtor filed a Response (Dckt. 48) indicating they do not dispute Defendant-IRS' Statement of Undisputed Facts (Dckt. 19).   The Parties and their counsel have each provided detailed statements of material facts not in dispute, and confirmed that they do not dispute the facts asserted not to be in dispute by the other.  Attached hereto as Addendum A, and incorporated herein by this reference, is a Table of Undisputed Facts.

In applying the *Beard* four prong test, the only issue that appears to be in contention between the parties is whether Plaintiff-Debtor's delay in filing their 2008 Return constitutes "an honest and reasonable attempt to satisfy the requirements of the tax law." *See* Defendant-IRS Memorandum of Points and Authorities, p. 3, Dckt. 26; *United States v. Hatton* (*In re Hatton II*), 220 F.3d at 1060-61.

Defendant-IRS asserts that Plaintiff-Debtor's conduct in the present case is analogous to the taxpayer's conduct in prior controlling cases; *United States v. Hatton* (*In re Hatton II*), 220 F.3d 1057 (9th Cir. 2000); *Smith v. United States IRS* (*In re Smith*), 828 F.3d 1094 (9th Cir. 2016); and *United States v. Martin* (*In re Martin*)*,* Bankr. No. 11-62436, A.P. No. 12-1131, Doc. 108 (Bankr. E.D. Cal 2017).

In *Hatton II*, the taxpayer, Hatton, failed to file a federal tax return on his own initiative and never attempted to cure this failure until after the Internal Revenue Service threatened to levy his wages and bank account and seize his personal property. *United States v. Hatton* (*In re Hatton II*), 220 F.3d 1057, 1061 (9th Cir. 2000).  Additionally, it took months of negotiations between the Internal Revenue Service and Hatton to agree on a settlement for an installment agreement. *Id.*  The Ninth Circuit found that Hatton's "belated acceptance of responsibility" did  not constitute an "honest and reasonable attempt" to comply with tax law. *Id.*  Instead, Hatton waited until the Internal Revenue Service left him with no other choice.  The Ninth Circuit thus concluded that Hatton's tax liability for the year at issue was nondischargeable due to a lack of an honest and reasonable attempt to satisfy the *Beard* test. *Id.*

In *Smith*, another Ninth Circuit case, the taxpayer failed to make a tax filing until seven years after his return was due and three years after the Internal Revenue Service calculated the deficiency

1  and issued an assessment.

2  > Here, Smith failed to make a tax filing until seven years after his return was due and
3  > three years after the IRS went to the trouble of calculating a deficiency and issuing
>  an assessment. Under these circumstances, Smith's "belated acceptance of
>  responsibility" was not a reasonable attempt to comply with the tax code. Many of
4  > our sister circuits have held that post-assessment tax filings are not "honest and
>  reasonable" attempts to comply and are therefore not "returns" at all. *See In re*
5  > *Justice*, 817 F.3d at 746; *In re Payne*, 431 F.3d 1055, 1057-60 (7th Cir. 2005); *In re*
>  *Moroney*, 352 F.3d 902, 907 (4th Cir. 2003); *In re Hindenlang*, 164 F.3d 1029,
6  > 1034-35 (6th Cir. 1999). But *see in re Colsen*, 446 F.3d 836, 840-41 (8th Cir. 2006).
>  We need not decide the close question of whether any post-assessment filing could
7  > be "honest and reasonable" because these are not close facts; the IRS communicated
>  with Smith for years before assessing a deficiency, and Smith waited several more
8  > years before responding to the IRS or reporting his 2001 financial information.

9  *Smith v. United States IRS* (*In re Smith*), 828 F.3d 1094, 1097 (9th Cir. 2016).  In *Smith*, the debtor

10  waited seven years after the return was first due to file a return (that increased the tax liability over

11  what had been assessed), which was three years after the Internal Revenue Service  assessed the tax

12  liability.  Smith then filed his bankruptcy case thirty months after filing the late return.  *IRS v. Smith*

13  *(In re Smith)*, 527 B.R. 14, 15 (N.D. Cal 2014), the District Court decision that was affirmed by the

14  Ninth Circuit.

15  In reviewing the above cases cited by the Ninth Circuit, they truly present some "interesting"

16  and "creative" circumstances in which those debtors asserted to have made an "honest and

17  reasonable attempt to satisfy the requirements of the tax law."  The conduct of those debtors

18  includes: (1) the tax return being sent to Arlington National Cemetery rather than the Internal

19  Revenue Service (*Payne*), (2) multiple tax years for returns not filed and filing of returns multiple

20  years after the substitute return was filed (*Justice*, *Moroney*), and (3) a conclusion of law that once

21  a substitute return is filed by the Internal Revenue Service then the late file tax return filed by the

22  debtor did not serve any tax purpose, but merely duplicated the substitute return and assessment by

23  the Internal Revenue Service, and therefore  could not quality as a "tax return" for 11 U.S.C.

24  § 523(a)(1)(B) (*Hindenlang*).

25  With respect to *United States v. Hindenlang (In re Hindenlang)*, the Sixth Circuit does not

26  state that once a substitute return has been filed and an assessment made by the Internal Revenue

27  Service there can never be a "return" filed for purposes of 11 U.S.C. § 523(a)(1)(B).  Rather, there

28  can be such a return filed if it is for a practical tax purpose and not merely to parrot what had been

assessed earlier.

> The basic facts are not in dispute. William Hindenlang did not file federal income tax returns for years 1985 through 1988 . . . When the debtor did not consent to the proposed liability, the IRS prepared substitute returns ("Substitutes for Returns" or "SFRs") for the relevant years and sent them to Hindenlang. See 26 U.S.C. § 6020(b) . . . Therefore, in 1991, after waiting the statutorily prescribed ninety days, the IRS assessed the deficiencies against Hindenlang.

> Finally, in 1993, two years after assessment, Hindenlang sent the IRS what was purported to be individual income tax returns for the years in question. Hindenlang used the proper Forms 1040, *see* 26 C.F.R. § 1.6012-1(a)(6), and calculated the taxes substantially the same as in the SFRs previously prepared by the IRS. Hindenlang still did not pay any of the deficiencies.
> . . .
> Hindenlang has not indicated any tax purpose under the Internal Revenue Code for filing his Forms 1040 . . .
> . . .
> We conclude that if a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law.[7]

> 7. We do not conclude that were Hindenlang able to show a tax purpose for filing a Form 1040 after the IRS has made an assessment, he would automatically satisfy the fourth prong of the Beard test. The government could still produce particularized evidence showing that such a late filing of a Form 1040 was neither an honest nor reasonable attempt to comply with the tax law. We save resolution of that hypothetical case for another day.

*United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1031, 1035 (6th Cir. 1999).

*Hindenlang* can be contrasted with the present facts where Plaintiff-Debtor filing the 2008 Late Return resulted in a substantial correction reducing the tax obligation for that 2007 previously assessed by Defendant-IRS, which correction being a "tax purpose" for the 2008 Late Return being filed (as well as other life circumstances impacting Plaintiff-Debtor and the actions taken by Plaintiff-Debtor).

In a recent Decision, the Ninth Circuit Court of Appeals applied the *Beard* to a California State tax obligation, concluding that California applies an almost identical standard for what constitutes a return. *Sienega v. Cal. Franchise Tax Bd. (In re Sienega)*, 18 F.4th 1164 (9th Cir. 2021). In concluding that the *Beard* factors were not satisfied, the facts determined by the Circuit Court included:

> The faxes [which that debtor sent the California Franchise Tax Board providing notice of an adjustment to his federal tax return] fail the *Beard* and *Tonsberg* tests. First, Sienega [the debtor] did not file state tax returns that complied with California

13

law.  RTC section 18501(a) provides that "[e]very individual taxable under Part 10 (commencing with Section 17001) shall make a return to the Franchise Tax Board, stating specifically the items of the individual's gross income from all sources and the deductions and credits allowable, if the individual" meets certain criteria for the tax year. Cal. Rev. & Tax. Code § 18501(a). RTC section 18621 sets forth certain requirements of form and content, namely that:

> any return, declaration, statement, or other document required to be made under any provision of Part 10 . . . shall contain, or be verified by, a written declaration that it is made under the penalties of perjury. Those returns, and all other returns, declarations, statements, or other documents or copies thereof required, shall be  in any form as the Franchise Tax Board may from time to time prescribe . . . and shall be filed with the Franchise Tax Board. The Franchise Tax Board shall prepare blank forms for the returns, declarations, statements, or other documents and shall distribute them throughout the state and furnish them upon application. Failure to receive or secure the form does not relieve any taxpayer from making any  return, declaration, statement, or other document required.

Cal. Rev. & Tax. Code § 18621. **Sienega did not file any document that complied with these requirements, and the faxes do not "purport to be a return."** Indeed, in its response, the FTB communicated to Sienega that he had not filed returns. Nor did the FTB indicate that it considered the faxes to be returns.

Second, **the faxes were not submitted under penalty of perjury**. In fact, **Sienega did not sign them at all;** they were transmitted by his lawyer. Even though Sienega may have been subject to criminal prosecution if he provided false information, that is not the same as signing a document under penalty of perjury.

Third, although the faxes communicated adjustments to federal taxes, and the FTB issued preliminary assessments, **the faxes did not contain enough data to allow complete computation of state tax.**

Fourth, nothing in the faxes indicates an "honest and reasonable attempt to satisfy the requirements of tax law." **The faxes simply communicate information about the outcome of a federal proceeding**.

In short, one of these things is not like the other. Thus, **the BAP correctly held that the faxes did not constitute state tax returns under § 523(a)'s hanging paragraph.**  The BAP's conclusion is in accord with our interpretation of the pre-BAPCPA version of § 523(a)(1)(B). *See In re Jackson*, 184 F.3d 1046, 1051 (9th Cir. 1999) (holding, before BAPCPA added the "equivalent report or notice" clause, that a "report" submitted to the FTB under RTC section 18622(a)'s predecessor statute did not qualify as a "return" under § 523(a)(1)(B)), superseded by statute, BAPCPA of 2005, Pub. L. No. 109-8 § 714, 119 Stat. 23, 128-29, as recognized in *In re Berkovich*, 15 F.4th 997, 998 (9th Cir. 2021).

*Id*., 1168-1169.  As discussed herein, the Plaintiff-Debtor's conduct is one hundred eighty degrees opposite of the debtor in *Sienega*.

In an earlier decision, *Martin*, the Ninth Circuit Bankruptcy Appeal Panel noted that there is binding Ninth Circuit Authority predating the 2005 amendments to determine when a taxpayer

should be treated as a return for nondischargeability purposes.  *United States v. Martin* (*In re Martin*), 542 B.R. 479, 480 (B.A.P. 9th Cir. 2015).  *Martin* states that *Hatton II* holds that the appropriate legal standard in the Ninth Circuit to determine whether there is an honest and reasonable effort to comply with the applicable tax laws.  Additionally, *Martin* uses *Hatton II* and *Nunez* to concluded that a post-assessment tax return is not the functional equivalent of "no tax return at all."  The Ninth Circuit Bankruptcy Appeal Panel vacated and remanded that adversary proceeding to the bankruptcy court to apply the proper legal standard.

In this Adversary Proceeding, Defendant-IRS asks the court to review the remand of *Martin*.  The Bankruptcy Court held a short trial in that adversary proceeding.  Adv No. 12-01131; Dckt. 106, 108.  A judgment was issued in favor of the United States.  Dckt. 110.  It is not clear from the court's record why judgment was issued in favor of the United States.  No memorandum opinion and decision was issued and there are no Civil Minutes from the trial stating the basis for the decision.  No transcript documenting that court's decision has been provided.

However, the underlying facts of *Martin* are addressed in the Bankruptcy Appellate Panel Decision,  *United States v. Martin (In re Martin)*, 542 B.R. 479, 480 (B.A.P. 9th Cir. 2015).  The Martins failed to file their tax returns for 2004, 2005, and 2006 at the time they were due.  The Internal Revenue Service issued a notice of deficiency for each of the years, which the Martins did not respond to.  The Martins prepared their missing tax returns through an accountant, in March 2011, but did not send the 2008 Late Return to Defendant-IRS until about five months later.  The Internal Revenue Service not having a return from the Martins, the Internal Revenue Service issued an assessment.  The Internal Revenue Service then gave the Martins notice of its intent to collect the assessed taxes by levy.  Only after the Internal Revenue Service had made the assessment and gave notice of the intent to collect the assessed taxes did the Martins file their tax returns.  Based on the tax returns filed, the Internal Revenue Service decreased the 2004 tax obligation by 5.8%, increased the 2005 tax obligation by 49.6%, and decreased the 2006 tax obligation by 15.9%.  (With these adjustments, the aggregate taxes due for the three tax years were reduced by a total of $1,253.00, which was only a 2.07% adjustment).  *Martin v. IRS*, 542 B.R. at 481.

Collier on Bankruptcy, discusses this issue and consideration of factors in determining

15

whether a late filed return is not "a return, or equivalent report or notice" for purposes of 11 U.S.C.

§ 523(a)(1)(B). The discussion by Collier in this section of that Treatise includes:

> Thus, the First, Fifth and Tenth Circuits, along with the majority of lower courts, have adopted a literal interpretation of section 523(a)(1)(B) and held that the phrase "applicable filing requirements" is unambiguous and includes deadlines for filing tax returns. This has been referred to as the "one day late" rule because a return filed even one day late will preclude discharge. While this approach is one reading of the statutory text and is simple to apply, an increasing number of courts, including most recently the Eleventh Circuit, have correctly criticized the approach as inconsistent with the statutory intent and for the harshness of its results. In *In re Shek*, the Court of Appeals for the Eleventh Circuit reasoned that "applicable filing requirements" do not unambiguously include filing deadlines, but instead should only include aspects of the return that have a "material bearing on whether or not it can reasonably be described as a 'return'—but not to more tangential considerations."[145a] The court contrasted its ruling from the rulings in the First, Fifth and Tenth Circuits by asserting that those courts "discounted the force of the surplusage canon" and that their interpretation would render section 523(a)(1)(B)(ii) "insignificant." In addition, even the IRS does not support the "one day late" rule [citing to briefs filed by the IRS in other cases].
>
> . . .
>
> In *In re Martin*, the Bankruptcy Appellate Panel for the Ninth Circuit also rejected the literal approach to interpreting the hanging paragraph in section 523(a)(*) as applying an "unforgiving view of congressional intent."[150] The court instead held that the determination of whether a return is filed is governed by *United States v. Hatton (In re Hatton[II])*,[151] which considers whether the document (1) purports to be a return, (2) is executed under penalty of perjury, (3) contains sufficient data to calculate the tax and (4) is an honest and reasonable attempt to satisfy the law.
>
> . . .
>
> Other courts after the *Hindenlang* decision disagreed with *Hindenlang* and recognized a return filed by a taxpayer even after the assessment of a tax liability under section 6020(b) of the IRC. One example is a decision of the Ninth Circuit Bankruptcy Appellate Panel which, on very similar facts, came to the opposite conclusion. In *In re Nunez*, the debtor did not timely file tax returns, the IRS prepared substitutes for returns and assessed tax liabilities for the years in question, and the debtor filed income tax returns reflecting the same wage income as the substitute returns filed by the IRS. The IRS argued for "an absolute rule that where it prepares substitute returns and assesses the taxes due, any document subsequently filed by the debtor cannot be deemed a return."*169* The Ninth Circuit B.A.P. rejected this approach first by concluding that the existence of an assessment by the IRS does not bar dischargeability. Section 523(a)(1)(B) does not state that a return must be filed prior to an assessment by the IRS to be effective for dischargeability purposes.
>
> . . .
>
>     The fourth prong of the four part test for the filing of a "return" is the factual issue of good faith: is there an honest and reasonable attempt to satisfy the requirements of the tax laws? The Courts of Appeals for the Third and Eleventh Circuits recently have joined the Fourth, Sixth, Seventh and Ninth Circuits in holding that delinquency in filing is relevant to this *Beard* factor.*175* In *In re Justice*, the Eleventh Circuit held that "[f]ailure to file a timely return, at least without a legitimate excuse or explanation, evinces the lack of a reasonable effort to comply with the law. This interpretation comports with the common-sense meaning of 'honest and reasonable.' " In *In re Giacchi*, the Third Circuit cited Justice in concluding that a debtor's "belated filings [were] merely self-serving bids to reduce

his tax liabilities, rather than attempts to comply with the requirements and objectives of prompt self-reporting and self-assessment."

The [Bankruptcy Appellate Panel] for the Tenth Circuit in *In re Savage* concluded the honest and reasonable attempt test requires the document to "appear on its face to constitute an honest and genuine endeavor to satisfy the law."[178]   Under this version of the test for a "good faith" filing, a court is asked only to determine if the document in question "on its face" was filed in good faith. The good faith standard for the filing of a return under section 523(a)(1)(B) was therefore narrow in scope:

> The good faith inquiry under section 523(a)(1)(B) should focus on the debtor's intent at the time the returns were filed. This keeps the inquiry relevant to section 523(a)(1)(B). A focus on the delay in filing, or the number of missed years is relevant instead to an inquiry under section 523(a)(1)(C).
> …
> …
> The IRS has the ultimate burden of proof as to whether a return has been filed. It has failed to present evidence raising a genuine issue as to a material fact on the issue of good faith, even under the broad scope argued for by the IRS.

145a. *Massachusetts Dep't of Revenue v. Shek (In re Shek)*, 947 F.3d 770, 777 (11th Cir. 2020).

150. *United States v. Martin (In re Martin)*, 542 B.R. 479 (B.A.P. 9th Cir. 2015)*; see also Van Arsdale v. IRS (In re Van Arsdale)*, 2017 Bankr. LEXIS 1388 (Bankr. N.D. Cal. May 18, 2017) (following Martin in applying the *Hatton* test and in rejecting the IRS's argument that a return filed after the IRS files a substitute for return can never qualify as a "return" under 523(a)(1)(B)).

151. 220 F.3d 1057, 44 C.B.C.2d 970 (9th Cir. 2000) (citing *United States v. Hindenlang (In re Hindenlang,* 164 F.3d 1029 (6th Cir. 1999) [discussed *infra*])).

169. *In re Nunez*, 232 B.R. 778, 784 (B.A.P. 9th Cir. 1999).

175. *Justice v. United States (In re Justice)*, 817 F.3d 738, 744 (11th Cir. 2016) (the fourth *Beard* factor requires "analysis of the entire time frame relevant to the taxpayer's actions."); *see also Giacchi v. United States (In re Giacchi)*, 856 F.3d 244 (3d Cir. 2017) ("Forms filed after their due dates and after an IRS assessment rarely, if ever, qualify as an honest or reasonable attempt to satisfy the tax law."); *In re DeFreze*, 589 B.R. 518 (Bankr. W.D.N.Y. 2018) (late-filed New York state income tax return was not an honest and reasonable effort to comply with tax law); *Bell v. United States (In re Bell)*, 565 B.R. 702 (Bankr. M.D. Fla. 2017) (late filing will not constitute a return unless a legitimate excuse or explanation can be established).

178. *Savage v. IRS (In re Savage)*, 218 B.R. 126, 132 (B.A.P. 10th Cir. 1998).

11 Collier on Bankruptcy P TX4.02(b) (16th 2021).[4]

---

[4] While of substantial length, the court has included the Collier text rather than merely summarizing it so that a reader of this Decision has the benefit of the extensive analysis of the two difference Circuit camps on this issue.

Defendant-IRS contends that they are not required to accept the 2008 Late Return of Plaintiff-Debtor. While Defendant-IRS is not statutorily required to accept an amended return or treat it as superseding an original return (See *Fayeghi v. Comm'r*, 211 F.3d 504, 507 (9th Cir. 2000)) this is not dispositive of whether an amended return constitutes a "return" for purposes of 11 U.S.C. § 523(a)(1)(B).

Here, since the 2008 Late Return was filed or given before the two years preceding the petition date (the required time period specified in 11 U.S.C. § 523(a)(1)(B)(ii) before a bankruptcy case is filed for a tax debt to be dischargeable), the crux of the issues falls under whether it constitutes a "return." If not a "return" for purposes of 11 U.S.C. § 523(a)(1)(B), then under subsection (i), a return was never filed and Plaintiff-Debtor could not be discharged from the debt. If, however, this court determines the 2011 filing was a "return," then it will be discharged.

Although determined based on the pre-BAPCPA amendment, the Eighth Circuit Court of Appeals has held that tax returns filed after an IRS assessment can be considered "returns" for purposes of 11 U.S.C. § 523(a)(1)(B). *See Colsen v. United States IRS* (*In re Colsen*), 446 F.3d 836 (8th Cir. 2006). In *Colsen*, the debtor failed to file tax returns for the years 1992 through 1996. The Internal Revenue Service prepared substitutes for the missing returns and issued notices of deficiency. In mid-1999, the Internal Revenue Service assessed taxes for the years 1992 through 1996. By late 1999, the debtor filed 1040 forms for 1992 through 1998.

*Colsen* determined that absent information that forms appear obviously inaccurate or fabricated, the information was honest and genuine enough to satisfy the honest and reasonableness prong. *Id.* at 840. *Colsen*, however, distinguishes from *Martin* and *Hatton II* and only inquires into whether the form itself has an honest and genuine attempt to satisfy the tax laws. *Colsen*'s standard does not does not "require inquiry into the circumstances under which a document was filed." *Id.* *Colsen* suggests courts do not look at all relevant facts surrounding a debtor's late filing, only look to the document itself.

This court follows the decisions of the Ninth Circuit Court of Appeals and concurs with the Ninth Circuit Bankruptcy Appellate Panel. The "fresh start" policy encompassing the Bankruptcy Code favors broad construction of exceptions to discharge favorable to debtors. *Grogan v. Garner*,

18

498 U.S. 279, 283 (1991). Such a fresh start is part of Bankruptcy being a redemptive judicial process, not just for debtor but creditors as well, providing both with the ability to address prior financial distress and foibles. As addressed below, Plaintiff-Debtor did not wait until the Bankruptcy Case was filed, but years before in filing the 2008 Late Return with the necessary accurate information for the correct amount of federal taxes to be determined.

Applying *Hatton II*, *Martin*, and related line of cases, this court looks to the totality of circumstances to determine if Plaintiff-Debtor acted honestly and reasonably for the filing of a return as provided in 11 U.S.C. § 523(a)(1)(B).

**The 2008 Late Tax Return is a**
**Return "Filed or Given" For Purposes**
**of 11 U.S.C. § 523(a)(1)(B)**

Under the totality of the circumstances (and not merely considering whether the information on the 2008 Late Return was accurate) and in considering all relevant facts surrounding Plaintiff-Debtor and the Late 2008 Return, the court finds that Plaintiff-Debtor has satisfied the *Beard/Hatton II* factors, including the late filing being an honest and reasonable attempt to satisfy the requirements of the tax law was honest and reasonable. These facts and circumstances include:

1.   Plaintiff-Debtor's 2008 Late Return was received by Defendant-IRS roughly one hundred and fifty days after Defendant-IRS mailed the Notice of Deficiency.

2.   In 2008 Plaintiff-Debtor began experiencing financial difficulties (as did many at the start of the Great Recession). These financial difficulties including Plaintiff-Debtor losing a rental property through a foreclosure.

3.   The two individuals constituting the Plaintiff-Debtor began suffering martial difficulties, which resulted in them being permanently separated in 2010.

4.   Nicole Golden, one of the two persons constituting the Plaintiff-Debtor, began operating Plaintiff-Debtor's former joint business as a sole-proprietorship, taking over the tax responsibilities from Stephen Alter, the other person constituting the Plaintiff-Debtor.

5.   Plaintiff-Debtor having filed the 2008 Late Return after the Substitute Return had been filed by the Defendant-IRS, the IRS was able to reduce the outstanding tax obligation for 2008 from the assessed $417,000.00 (original $276,506 assessment plus interest and penalties) to $23,000.00.

6.   Plaintiff-Debtor sought and obtained an extension for the filing of the 2008 return, with the extension being until October 15, 2009. Plaintiff-Debtor was not ignoring the obligation to file a return, though Plaintiff-Debtor failed to file the 2008 return within the extension period.

7.      In March 2011, the tax preparer completed the 2008 Late Return, which Plaintiff-Debtor then did not send to Defendant-IRS until August 2011. The stated reason for the delay was that Plaintiff-Debtor was trying to figure out how to pay the tax liability shown on the 2008 Late Return.

8.      Plaintiff-Debtor's filed return provided accurate information by which the large portions of the inaccurate information and deficiencies were removed or reduced.

9.      The Plaintiff-Debtor filed their bankruptcy case on filed April 30, 2014, which was three years after Plaintiff-Debtor's 2008 tax return was received by Defendant-IRS.

10.     Through their completed Chapter 13 Plan Plaintiff-Debtor paid in full all priority and secured tax claims totaling $58,059.56, and a dividend of $1,221.85 on the ($30,665.25) general unsecured claim. 14-24616; CH 13 Trustee's Final Report, Dckt. 93.

The evidence shows that there were interceding real life events – financial and personal – that disrupted Plaintiff-Debtor. Such events are not excuses for failing to comply with the law, but provide explanations as to why such occurred. Plaintiff-Debtor did not seek to avoid and hide from their tax obligation for 2008, and began taking corrective steps beginning no later than early 2011 (approximately sixteen months after the October 15, 2009 extension period had expired).

From the evidence presented, the court concludes that Plaintiff-Debtor did not act with a belated acceptance of responsibility or in an attempt to present inaccurate or fabricated information to Defendant-IRS. Although Plaintiff-Debtor failed to file a timely return, the evidence provides a basis for concluding that Plaintiff-Debtor did file a return and which favors a finding of a reasonable effort to comply with the law.

Plaintiff-Debtor has established that the four prong test is satisfied: (1) purports to be a return, (2) is executed under penalty of perjury, (3) contains sufficient data to calculate the tax and (4) is an honest and reasonable attempt to satisfy the law. *Smith v. United States IRS (In re Smith)*, 828 F.3d 1094, 1096 (9th Cir. 2016). Though belated, Plaintiff-Debtor has made an honest and reasonable attempt to satisfy the law, provided solid and accurate information to Defendant-IRS, and communicated with the Defendant-IRS. Plaintiff-Debtor obtained the assistance of a tax professional for the filing of the late return to present accurate and necessary information for the determination of the correct 2008 tax obligation.

1    Plaintiff-Debtor has addressed significant claims, including secured and priority tax

2 obligations owed to Defendant-IRS (admittedly, which Plaintiff-Debtor was required to address in

3 order to confirm and complete the Chapter 13 Plan).  In addition to filing the 2008 Late Return,

4 Plaintiff-Debtor has not tried to walk away from debt, but has elected to spend five years in

5 "bankruptcy purgatory" in order to obtain a discharge and financial "redemption."

6    With respect to filing the 2008 Late Return, the Defendant-IRS has confirmed that accurate

7 information was provided, reducing the amount of the 2008 Defendant-IRS assessed tax obligation.

8 Plaintiff-Debtor's corrective actions were not merely filing a "me too" 2008 return which parroted

9 the assessed tax and then two years later file bankruptcy and assert the debt was discharged.

10 Plaintiff-Debtor, working through the personal and financial maelstrom hired a tax preparer, had the

11 2008 Late Return prepared and filed, with that 2008 Late Return providing Defendant-IRS with

12 accurate and useful information to correctly compute the correct 2008 federal tax obligation.  The

13 correct 2008 federal tax obligation was reduced from the $417,000.00 tax obligation (including

14 penalties and interest thereon) asserted based on the previously assessment by Defendant-IRS, to

15 the correct $23,040.00 tax obligation for 2008.  The failure to file the 2008 return earlier was not

16 part of some "financial strategy" or "scheme" to under report or underpay taxes, but was financially

17 disadvantageous to Plaintiff-Debtor.  There is no identifiable bad faith reason for the failure to file

18 the 2008 Late Return sooner in the facts presented to the court.  Rather, the personal and financial

19 maelstrom is the reason for Plaintiff-Debtor stumbling with respect to the 2008 federal tax return.

20    In these facts, both Plaintiff-Debtor and Defendant-IRS present the situation where both the

21 taxpayer Plaintiff-Debtor and Defendant-IRS ultimately worked to address and compute the correct

22 tax obligations, and the tax payer filing the 2008 Late Return provided Defendant-IRS with accurate

23 information.  Defendant-IRS acted to ensure that the correct amount of tax obligations owed were

24 determined, and then recover substantial amounts of such tax liabilities.  Plaintiff-Debtor has acted

25 property, though beset with financial difficulties arising out of the Great Recession and marital

26 difficulties to address and substantially pay such tax obligations.

27    Therefore, Plaintiff-Debtor's Countermotion for Summary Judgment is granted.  Judgment

28 shall be entered for Plaintiff-Debtor and against Defendant-IRS determining the obligations for

Plaintiff-Debtor for the 2008 tax year have been discharged in Plaintiff-Debtor's Chapter 13 Bankruptcy Case. Plaintiff-Debtor has completed the Chapter 13 Plan in that Bankruptcy Case and the discharge was entered on February 18, 2020. 14-24616; Discharge, Dckt. 101.

Further, Defendant-IRS's Motion for Summary Judgment is denied.

The court shall enter separate orders for each of the Motions.

**Dated:**  April 27, 2022                    **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

22

# ADDENDUM A

## Table of Undisputed Facts

| Plaintiff-Debtor | Defendant-IRS |
|---|---|
| Plaintiff-Debtor experienced financial difficulties which adversely affected their business and marriage. Dckt. 29.  Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| | Income tax returns for tax year 2008 were due on April 15, 2009. Dckt. 19.  Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| On April 15, 2009, Plaintiff-Debtor filed a Request for Extension of Time and extended the date for filing their 2008 Tax Return to October 15, 2009. Dckt. 29. | Plaintiff-Debtor sought and received a 6-month extension of their 2008 Tax Return deadline to October 15, 2009. Dckt. 19. |
| Plaintiff-Debtor permanently separated in 2010. Dckt. 29.  Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| | On April 12, 2010, Defendant-IRS sent an inquiry regarding Plaintiff-Debtor's failure to file their 2008 Return. Dckt. 19.  Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| | In August 2010, Plaintiff-Debtor's accounts were referred for an income tax examination. Dckt. 19.  Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| | Defendant-IRS prepared a substitute tax return for the Plaintiff-Debtor. Dckt. 19.  Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| On March 8, 2011, Plaintiff-Debtor filed their 2009 Tax Return. Dckt. 29.  Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| At the end of 2010, Plaintiff-Debtor began working with tax preparer Jean Barnett to prepare their back taxes. Dckt. 29.  On March 10, 2011, Barnett completed Plaintiff-Debtor's 2008 Tax Return. *Id.*  This return showed a total tax of $23,377.00 and a balance due of $23,040.00. *Id.*  Plaintiff-Debtor signed the Return on the same day. *Id.* | Plaintiff-Debtor retained Jean Barnett to prepare their 2008 Tax Return. Dckt. 19.  The Return was signed by Plaintiff-Debtor and Barnett on the same day. *Id.* |

1

| | |
|---|---|
| On March 14, 2011, Plaintiff-Debtor received a letter from Defendant-IRS asserting a tax deficiency of $276,506.00 which was based primarily on self-employment income of $760,199.00. Dckt. 29. | On March 14, 2011, Defendant-IRS issued a Notice of Deficiency to Plaintiff-Debtor, which identified a deficiency of $276,506.00 and multiple statutory additions. Dckt. 19. |
| | The Notice informed Plaintiff-Debtor that if they wanted to contest Defendant-IRS' determination before making any payment, they had 90 days to file a petition in the U.S. Tax Court. Dckt. 19. Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| | Plaintiff-Debtor did not file any petition in the Tax Court. Dckt. 19. Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| Plaintiff-Debtor mailed their 2008 Return to Defendant-IRS, which Defendant-IRS received on August 10, 2011. Dckt. 29. Plaintiff-Debtor's Return showed a gross income of $760,200 from Plaintiff-Debtor's business, but a net profit of $132,123 after accounting for expenses. *Id.* | Defendant-IRS received Plaintiff-Debtor's 2008 Return on August 10, 2011. Dckt. 19. Defendant-IRS notes that the 2008 return was postmarked on August 8, 2011. *Id.* |
| | Defendant-IRS noted Plaintiff-Debtor's mailed return as a "Duplicate" and "Amended" since Defendant-IRS already prepared a substitute return for Plaintiff-Debtor. Dckt. 19. Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| For nineteen (19) months, Plaintiff-Debtor attempted to get Defendant-IRS to correct the balance owed on the 2008 Return. Dckt. 29. Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| On February 11, 2013, Defendant-IRS confirmed they made mistakes on Plaintiff-Debtor's 2008 Return and reduced the balance from $417,000.00 to $23,040.00. Dckt. 29. | At various points in 2012 and 2013, large portions of the deficiencies identifies in Defendant-IRS' Notice were removed from Plaintiff-Debtor's accounts. Dckt. 19. |
| Plaintiff-Debtor attempted to "work with" Defendant-IRS regarding the back taxes owed. Dckt. 29. Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| On April 30, 2014, Plaintiff-Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code in this court. Dckt. 29. | On April 30, 2014, Plaintiff-Debtor filed a voluntary Chapter 13 petition in this court. Dckt. 19. |

| | |
|---|---|
| On June 11, 2014, Defendant-IRS filed Claim 2-1 for a total of $88,515.94, of which $7,979.51 was identified as secured, $49,871.18 was identified as priority, and $30,665.25 was identified as general unsecured claims. Dckt. 29. | On June 11, 2014, Defendant-IRS filed Claim 2-1 for a total of $88,515.94, of which $7,979.51 was identified as secured, $49,871.18 was identified as priority, and $30,665.25 was identified as general unsecured claims. Dckt. 19. |
| Claim 2-1 listed the 2008 taxes as general unsecured and showed an assessment date of July 8, 2011. Dckt. 29. | Claim 2-1 listed $21,572 for tax year 2008 based on a July 8, 2011 assessment. Dckt. 19. Claim 2-1 included $4,083.50 in interest on the 2008 outstanding balance. *Id.* |
| On July 18, 2014, Plaintiff-Debtor filed a First Amended Chapter 13 Plan ("Plan"). Dckt. 29. | On July 18, 2014, Plaintiff-Debtor filed a First Amended Chapter 13 Plan ("Plan"). Dckt. 19. |
| On December 29, 2014, Plaintiff-Debtor's Plan was confirmed. Dckt. 29. | On December 29, 2014, Plaintiff-Debtor's Plan was confirmed. Dckt. 19. |
| Defendant-IRS did not object to Plaintiff-Debtor's Plan and did not file an objection to discharge before the deadline of August 11, 2014. Dckt. 29. Defendant-IRS does not specifically dispute this fact in its response. Dckt. 41. | |
| Plaintiff-Debtor completed their Plan, paying a total of $51,093.03 to Defendant-IRS. Dckt. 29. | Plaintiff-Debtor paid of all secured and priority taxes identified in Claim 2-1. Dckt. 19. |
| On February 18, 2020, Plaintiff-Debtor obtained their discharge. Dckt. 29. | On February 18, 2020, Plaintiff-Debtor obtained their discharge. Dckt. 19. |
| On June 29, 2020, Plaintiff-Debtor received notice that Defendant-IRS had a lien based on owed taxes from 2008. Dckt. 29. | On June 29, 2020, Plaintiff-Debtor received notice that Defendant-IRS recorded notice of a federal tax lien based on the 2008 tax year. Dckt. 19. |
| | On February 8, 2021, Plaintiff-Debtor initiated the present adversary proceeding. Dckt. 19. Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |
| | On April 15, 2020, Defendant-IRS transferred a credit of $3,628.00 from at least one of Plaintiff-Debtor's 2019 accounts to the 2008 account. Dckt. 19. Plaintiff-Debtor does not specifically dispute this fact in its response. Dckt. 48. |

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Debtor(s) / Plaintiff-Debtor(s) | Attorney for the Debtor(s) / Plaintiff-Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Ty Halasz, Esq.<br>P.O. Box 683<br>Ben Franklin Station<br>Washington, DC 20044 |